46454.   STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY v. HARPER et al.

Argued September 13, 1971—Decided March 10, 1972.

*Martin, Snow, Grant & Napier, Cubbedge Snow, Jr., George G. Grant,* for appellant.

*McKenney & Thornton, Neal D. McKenney, Richard B. Thornton,* for appellees.

QUILLIAN, Judge. The defendant makes three principal contentions: (1) that since the plaintiffs recovered under the Ford policy they were not entitled to recover any sums

under the Corvair policy; (2) that the amount paid under the uninsured motorists coverage should be reduced by the amounts paid under medical payments coverage; (3) that in view of the novel legal questions presented there was no legal basis for the imposition of bad faith penalty and attorney's fees.

■ In this case there were two separate insurance policies—the Ford policy and the Corvair policy. The inception of both policies was on the same day. However, they each had different expiration dates and were for different premiums. Neither policy made reference to the other and while they contained many identical provisions they were in all material respects separate policies.

As held in *Gulf American Fire &c. Co. v. McNeal,* 115 Ga. App. 286, 291 (154 SE2d 411), the Uninsured Motorist Act provides for two classes of insured persons. One of these classes are insured persons only when the insured automobile is involved, but as to the other they are insured persons even where the insured automobile is not in any way involved in the insured's injuries. This class is: "The named insured and, while resident of the same household, the spouse of any such named insured, and relatives of either, while in a motor vehicle or otherwise." See *Code* § 56-407A (b) (*Code Ann.* § 56-407.1; Ga. L. 1963, p. 588; 1964, p. 306; 1967, pp. 463, 464; 1968, pp. 1089, 1091; 1968, pp. 1415, 1416; 1971, pp. 926, 927). Therefore, the plaintiff and his wife were insured under the Corvair policy.

It is urged that provisions of the Corvair policy serve to exclude the plaintiffs from coverage while occupying the Ford automobile. In *Travelers Indem. Co. v. Williams,* 119 Ga. App. 414, 416 (167 SE2d 174), we pointed out that any policy provision which attempts to contravene the clear intent of the Uninsured Motorists' Act is void and not enforceable. In that case we held that an insured under two separate uninsured motorist policies, may recover on both policies not to exceed his actual damages pursuant to the uninsured motorist statute. The Supreme Court approved this decision in *State Farm Mut. Auto. Ins. Co. v. Murphy,*

226 Ga. 710 (177 SE2d 257), and allowed recovery of plaintiffs' actual loss within the limits of the policies involved. In this case the plaintiffs were in the position of being the insureds in the Ford policy, both because they were insured persons and the insured automobile was involved, and were insured under the Corvair policy since they fell in the class of the named insured and his spouse.

*Doerpinghaus v. Allstate Ins. Co.,* 124 Ga. App. 627, 628 (185 SE2d 615), is not controlling here since in that case the court found that there was only one policy involved. It was there pointed out: "The extension certificates and the stipulation of fact reveal that there is only one policy involved insuring two automobiles." From the language of the opinion, this was the sole basis for holding that the $10,000 per person for one accident was the maximum amount which the plaintiff could recover. It may be true that the defendant here could have avoided the result reached by issuing only one policy but it did not choose to do so and where two policies are used even by the same company, we can see no reason for not applying the rules set forth in *Travelers Indem. Co. v. Williams,* 119 Ga. App. 414, supra, and *State Farm Mut. Auto. Ins. Co. v. Murphy,* 226 Ga. 710, supra.

■ In this case the trial judge did not give credit for the $1,000 the defendant paid each plaintiff under the provisions for medical payment but only credited the two payments made under the uninsured motorist provision totaling $18,000. As a result the principal amount of the judgment was $14,500 allowing the plaintiffs to recover $34,500 on the two policies when their judgment on which recovery was predicated totaled $32,500. The policies contain language providing that the amount payable as uninsured motorists coverage be reduced by any sums paid under medical coverage.

In Phillips v. State Farm Mut. Auto. Ins. Co., 437 F2d 365, the federal court held that sums paid under medical provisions of a policy could not serve to reduce the amount owed as uninsured motorist coverage. In that case plaintiff

had damages in excess of the $10,000 coverage for uninsured motorists. We think the result there reached was correct.

However, this is not the situation in the instant case. Here under the two policies, the plaintiffs were able to recover the full amounts for their claims, to wit, $12,500 and $20,000 respectively. In *State Farm Mut. Auto. Ins. Co. v. Murphy*, 226 Ga. 710, 714, supra, it is pointed out: "There is no danger of pyramiding multiple policies so as to recover beyond actual damage, a factor considered in some of the reported cases from other jurisdictions, *as the insured would not be legally entitled to recover amounts beyond his actual damages no matter how many policies he was the beneficiary of.*" (Emphasis supplied.) This same problem was recognized by this court in *Travelers Indem. Co. v. Williams*, 119 Ga. App. 414, 416, supra, where the question was considered as to whether the insured "under two separate uninsured motorist policies, may recover on both policies *not to exceed his actual damages* pursuant to the uninsured motorists statute." (Emphasis supplied.) It seems clear the policy of the Uninsured Motorists Act is not to allow an insured to "stack coverage" in order to recover amounts in excess of his actual damages. Thus, policy provisions which would limit coverage in this respect would not be void but would be enforceable.

In a recent case, *Ramsden v. Govt. Employees Ins. Co.*, 123 Ga. App. 163, 166 (179 SE2d 671), this court in considering medical payments held: "The contracts here involved, as to medical payments and funeral expenses incurred, were contracts of indemnity (*Exchange Bank of Macon v. Loh*, 104 Ga. 446 (31 SE 459, 44 LRA 372); Laurie v. Holland America Ins. Co., 31 Ill. App. 2d 437 (176 NE2d 678)), and once the insured party is paid in full under one contract of indemnity, recovery cannot be had again under another similar contract."

Insofar as the judgment herein entered allowed the plaintiff recovery in excess of the actual damages, it is error and must be reversed.

■ As to the recovery of penalties, damages, and attorney's fees: "Refusal to pay in bad faith means a frivolous and unfounded denial of liability. If there is any reasonable ground for the insurer to contest the claim, there is no bad faith. . ." *Dependable Ins. Co. v. Gibbs,* 218 Ga. 305, 316 (127 SE2d 454). Where questions of law as to the proper construction of an insurance policy provision have not been decided by the courts of Georgia and are not of easy solution, then a finding of damages for bad faith and attorney's fees is not authorized. *Life Ins. Co. of Ga. v. Burke,* 219 Ga. 214 (1) (132 SE2d 737); *Canal Ins. Co. v. Woodard,* 121 Ga. App. 356 (2) (173 SE2d 727). Moreover, here we have found in favor of the defendant's contention with regard to the medical payments and hence there is no legal basis for the application of any penalty. The portion of the judgment awarding damages for bad faith and attorney's fees is error.

The judgment is affirmed on the condition that the amount awarded to the plaintiff Cecil M. Harper in excess of $10,000 and the amount awarded to the plaintiff Sherry Gail Harper in excess of $2,500 and the sums for penalty and attorney's fees are written off within 15 days after the remittitur is made the judgment of the trial court, otherwise reversed.

*Judgment affirmed on condition. Jordan, P. J., concurs. Evans, J., concurs specially.*

EVANS, Judge, concurring specially. I concur in the judgment only, because I am bound by the rule of stare decisis, wherein this court and the Supreme Court of Georgia have construed the "bad faith" statute in many binding precedents, but with which precedents I do not agree. I do not agree with all that is said in the opinion, in the case sub judice, not because I differ with my associates, who are also bound by the rule of stare decisis, but because I do not believe those precedent cases are correct, and if it lay within my power to do so, I would overrule them and would affirm the award of penalty and attorney's fees in this case.

Whatever happened to the law requiring insurance companies to pay a penalty and attorney's fees for bad faith?

This law has been on the statute books for one hundred years. In 1872 the General Assembly of Georgia enacted a statute providing that if a loss occurs and the insurance company fails to pay the claim within sixty days after demand shall have been made by the holder of the policy, said insurer shall be liable to pay not more than 25% on the liability and all reasonable attorney's fees, provided the refusal to pay is in bad faith. See Georgia Laws 1872, p. 43. This same law exists in comparable form today, and is now known as *Code Ann.* § 56-1206 (Insurance Code of 1960).

But little by little our appellate courts have chiseled and whittled away until this statute, by judicial interpretation and construction, is almost meaningless. It is a rare case indeed, when penalty and attorneys fees are awarded for bad faith, that such case runs the gauntlet of the Court of Appeals and the Supreme Court and comes out unscathed. Almost all of them end in a requirement that the verdict of the jury be modified and that penalty and attorney's fees for bad faith be written off.

I disagree with these many judicial interpretations of the statute and find no basis therefor. What was the "intent" of the General Assembly in enacting this statute one hundred years ago, and in keeping it on the statute books, with slight amendment, until the present time? Our appellate courts have held that the intent of the General Assembly must be read into this statute so as to show that it was *not intended* that bad faith could be upheld, and penalty and attorney's fees awarded:

1. If the insurance company has "reasonable grounds to defend" the suit. *Royal Ins. Co. v. Cohen,* 105 Ga. App. 746 (3) (125 SE2d 709).

2. If the evidence authorized a finding for defendant, although the jury did not accept defendant's version, and rendered a verdict against that version and in plaintiff's favor. *Old Colony Ins. Co. v. Dressel,* 109 Ga. App. 465 (3) (136 SE2d 525).

3. If there was "reasonable and probable cause" for deny-

ing plaintiff's claim. *Ga. Farm Bureau Mut. Ins. Co. v. Boney,* 113 Ga. App. 459 (3) (148 SE2d 457).

4. If there is a bona fide dispute between claimant and his insurer as to the amount of the loss. *Ga. Farm Bureau Mut. Ins. Co. v. Boney,* supra.

5. If the interpretation of the policy presents a close question (even though the insurer's lawyers wrote the policy, studied it and should know it forward and backward, and even though all ambiguities must be construed most strongly against the insurer.) *U. S. Fidel. &c. Co. v. Woodward,* 118 Ga. App. 591 (2) (164 SE2d 878).

6. If the case presents a question of law that is intricate and difficult. *Fireman's Fund Ins. Co. v. Standridge,* 103 Ga. App. 442 (5) (119 SE2d 585).

7. If some particular provision of the policy has not been heretofore construed by the Georgia courts. *Life Ins. Co. of Ga. v. Burke,* 219 Ga. 214 (1) (132 SE2d 737).

8. If the insurer's refusal to pay is not both "frivolous *and* unfounded." *Dependable Ins. Co. v. Gibbs,* 218 Ga. 305, 316 (127 SE2d 454). (Formerly the language was "frivolous *or* unfounded." *Cimarron Ins. Co. v. Pace,* 212 Ga. 427, 431 (93 SE2d 593); *Metropolitan Life Ins. Co. v. Lovett,* 50 Ga. App. 763, 768 (179 SE 253); *American Nat. Ins. Co. v. Holbert,* 50 Ga. App. 527, 528 (179 SE 219).

9. If the plaintiff does not recover every penny that he sues for (even though the insurance company denies any indebtedness whatever). See *Great American Indem. Co. v. Kennedy,* 94 Ga. App. 567, 570 (95 SE2d 742); *Firemen's Ins. Co. v. Larsen,* 52 Ga. App. 140 (3) (182 SE 677).

But let it be noted that our appellate courts have also held to the contrary on this question. See *Canal Ins. Co. v. Winge Bros.,* 97 Ga. App. 782, 786 (104 SE2d 525); *Central Mfrs.' Mut. Ins. Co. v. Graham,* 24 Ga. App. 199 (4) (99 SE 434); *Metropolitan Ins. Co. v. Lovett,* 50 Ga. App. 763, 766, supra; *New York Life Ins. Co. v. Williamson,* 53 Ga. App. 28 (1b) (184 SE 755).

These are some, but by no means all of the conditions that have been engrafted onto the bad faith statute by judi-

cial interpretation and construction, the effect of which is to allow an almost complete escape from payment of penalty and attorney's fees for bad faith. Could it be that our General Assembly *really intended* that this statute be so restricted, hampered, and placed in a strait-jacket? Did the General Assembly mean to give lip service only to the question of bad faith, with no real relief to be afforded? It is true that occasionally a verdict for bad faith is affirmed, but it is so rare as to be almost like Shakespeare's dissertation on the fishnet:

"Help master, help! Here's a fish hangs
in the net like a poor man's right in
the law; 'twill hardly come out."
(Pericles Prince of Tyre 11:1).

If the language used in *Code Ann.* § 56-1206 (which seems clear and unambiguous) means what our courts have construed it to mean, then the General Assembly should take a second look at the statute. If it is intended to do away with the bad faith law entirely, a simple repeal of the statute would accomplish that end; but if it is intended that the law shall be effective, some amendment is indicated to overcome the various far-fetched constructions and interpretations that have been placed thereon by our appellate courts of Georgia.